UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDOR KOZLOV, individually, and on behalf of all other similarly situated individuals, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF CHICAGO, a municipal corporation, LORI E. LIGHTFOOT, in her official capacity as Mayor of the City of Chicago, CHICAGO DEPARTMENT OF PUBLIC HEALTH, ALLISON ARWADY, in her official capacity as Commissioner of the Health for the Chicago Department of Public Health, CHICAGO DEPARTMENT OF BUSINESS AFFAIRS & CONSUMER PROTECTION, <br><br> Defendants. | No. 21 C 6904 <br><br> Judge Sara L. Ellis |

**OPINION AND ORDER**

On December 21, 2021, Dr. Allison Arwady, the Commissioner of the Chicago Department of Public Health, issued Order 2021-2, which requires that, as of January 3, 2022, individuals five years of age or older show proof of vaccination against COVID-19 to dine indoors, visit gyms, and enjoy entertainment venues that serve food or drink within the City of Chicago.[1] On December 29, 2021, Plaintiff Fedor Kozlov filed this suit against Defendants the City of Chicago, Mayor Lori E. Lightfoot, the Chicago Department of Public Health, Arwady, and the Chicago Department of Business Affairs and Consumer Protection, challenging Order 2021-2. Kozlov, who holds season tickets for Chicago Bulls and Blackhawks games and is not vaccinated against COVID-19, brings federal constitutional claims alleging that Order 2021-2

---

[1] Order 2021-2 has since been amended and reissued, with the most recent version effective as of January 26, 2022. The Court considers the January 26 version throughout this Opinion. The Court also notes that the vaccine requirement set forth in Order 2021-2 ends on February 28, 2022.

violates substantive due process, equal protection, and the Commerce Clause. He also brings state law claims for tortious interference with contract and prospective business expectancy, unjust enrichment, and violation of Article VII, Section 6 of the Illinois Constitution. In connection with his complaint, Kozlov sought a temporary restraining order and preliminary injunction to enjoin enforcement of Order 2021-2. After hearing argument from the parties, the Court denied Kozlov's motion for a temporary restraining order and preliminary injunction. *See* Docs. 16, 23, 35, 42. Kozlov has appealed the Court's denial of his requests for preliminary injunctive relief. In the meantime, Defendants filed a motion to dismiss Kozlov's complaint, which is ripe for review.[2] Because Kozlov has not sufficiently stated any claim concerning Order 2021-2 and amendment of the complaint to overcome its deficiencies would prove futile, the Court dismisses Kozlov's complaint with prejudice.

## BACKGROUND[3]

Arwady issued Order 2021-2 on December 21, 2021. Order 2021-2 requires individuals five years of age or older to show proof of vaccination (and identification if over the age of sixteen) against COVID-19 to dine indoors, visit gyms, and enjoy entertainment venues where food or drink are served within the City of Chicago. Order 2021-2 includes a number of exemptions. Order 2021-2 does not apply to houses of worship; pre-K-12 schools; childcare programs; O'Hare and Midway airports; locations in residential and office buildings limited to

---

[2] The pendency of Kozlov's appeal does not divest this Court of jurisdiction to consider the motion to dismiss. *Staffa v. Pollard*, 597 F. App'x 893, 895 (7th Cir. 2015) ("[A]n appeal from an interlocutory decision—here, the denial of a preliminary injunction—does not divest a district court of jurisdiction or prevent the court 'from finishing its work and rendering a final decision.'" (quoting *Wis. Mut. Ins. Co. v. United States*, 441 F.3d 502, 504 (7th Cir. 2006))).

[3] The Court takes the facts in the background section from Kozlov's complaint and the exhibits attached thereto and presumes them to be true for the purpose of resolving Defendants' motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). The Court "may also take judicial notice of matters of public record." *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1043–44 (7th Cir. 2019).

residents, owners, or tenants of the building; and food service establishments that provide only charitable food services. Order 2021-2, § 1 ("covered location" definition). Order 2021-2 also exempts the following:

> 1. Individuals entering a covered location for less than 10 minutes for the purpose of ordering and carrying out food, making a delivery, or using the bathroom;
>
> 2. A performing artist, or an individual accompanying such a performing artist, while the performing artist or individual is in a covered location for the purposes of such artist's performance;
>
> 3. A professional or college athlete, or an individual accompanying such professional or college athlete, who enters a covered location as part of their regular employment or conduct for purposes of the professional or college athlete/sports team competition;
>
> 4. Individuals who have previously received a medical or religious exemption, provided such patrons provide the covered entity proof of the medical or religious exemption and a COVID-19 test administered by a medical professional within the last 72 hours prior to entering a covered location.
>
> 5. An individual 18 years of age or younger who enters a covered location to participate in an after-school program, a child care program, or an activity organized or sponsored by a school, the Chicago Park District, or other organization as may be authorized in Chicago Department of Public Health guidance; and
>
> 6. An individual who enters for the purposes of voting in a municipal, state, or federal election; or, pursuant to law, assisting or accompanying a voter or observing such election.

Order 2021-2, § 5.

Kozlov holds season tickets for the Chicago Bulls and Chicago Blackhawks home games. The Bulls and Blackhawks play their home games at the United Center, which qualifies as a covered location under Order 2021-2. Kozlov had a COVID-19 infection in late August 2021. Despite consulting with medical providers regarding vaccination, he represents that he remains uncertain as to whether receiving full COVID-19 vaccination would put his health in further

3

jeopardy. Because he has not received the COVID-19 vaccine, he cannot meet Order 2021-2's requirements of presenting proof of full vaccination and thus cannot use his Bulls and Blackhawks season tickets to attend games himself.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. Fourteenth Amendment Claims

Before delving into the specific allegations of Kozlov's Fourteenth Amendment claims, the Court first sets forth the framework that guides its consideration of these claims in the context of the COVID-19 pandemic. "Our Constitution principally entrusts '[t]he safety and the health of the people' to the politically accountable officials of the States 'to guard and protect.'" *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring) (quoting *Jacobson v. Massachusetts*, 197 U.S. 11, 38 (1905)). When state officials

"undertake[ ] to act in areas fraught with medical and scientific uncertainties," their latitude "must be especially broad." *Id.* (alteration in original) (quoting *Marshall v. United States*, 414 U.S. 417, 427 (1974)). Over a century ago in *Jacobson v. Massachusetts*, the Supreme Court developed a framework by which to evaluate a State's exercise of its emergency authority during a public health crisis. There, the Court rejected a constitutional challenge to a State's compulsory vaccination law during the smallpox epidemic. *See generally Jacobson*, 197 U.S. 11. *Jacobson* explained that "[u]pon the principle of self-defense, of paramount necessity, a community has the right to protect itself against an epidemic of disease which threatens the safety of its members." *Id.* at 27. Thus, judicial review of claims challenging the exercise of emergency authority during a public health crisis, such as the COVID-19 pandemic, is only available in limited circumstances. *See S. Bay*, 140 S. Ct. at 1613–14 (Roberts, C.J., concurring) (where state officials do not exceed their broad latitude during a pandemic "they should not be subject to second-guessing by an 'unelected federal judiciary,' which lacks the background, competence, and expertise to assess public health and is not accountable to the people" (citation omitted)); *Jacobson*, 197 U.S. at 31. If a State implements emergency measures during an epidemic that curtail individual rights, courts uphold such measures unless they have "no real or substantial relation" to public health or are, "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Id.*

*Jacobson* guides the Court's analysis of Kozlov's Fourteenth Amendment claims. *See* Doc. 35 at 4. Kozlov's argument that *Jacobson* does not apply because Order 2021-2 resulted from local executive action without any state or legislative authorization has no merit. As the Court previously noted, *Jacobson* addressed a local policy enacted pursuant to authority granted to the municipality by the state, *see* 197 U.S. at 12, 25, and here, Arwady issued Order 2021-2

5

pursuant to not only state authorization allowing municipalities to take emergency measures to respond to the COVID-19 pandemic but also the Municipal Code of Chicago's authorization of emergency measures to stop the spread of communicable diseases and to protect the health and safety of the City's residents, Order 2021-2 at 1 (citing Executive Order No. 2022-04; M.C.C. 2-112-050, 2-112-110(a)(4), 2-112-130; Ill. Admin. Code tit. 77, §§ 690.1305(a), 690.1310(c)). Further, the Supreme Court and Seventh Circuit have relied on *Jacobson* in addressing cases involving restrictions imposed due to the COVID-19 pandemic. *See Klaassen v. Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) (relying on *Jacobson* in addressing students' challenge to their university's COVID-19 vaccination requirement); *Troogstad v. City of Chicago* ("*Troogstad I*"), --- F. Supp. 3d ----, 2021 WL 5505542, at *4 & n.4 (N.D. Ill. Nov. 24, 2021) ("[T]he Supreme Court has given no indication that *Jacobson* is void, and this Court cannot ignore binding precedent simply because Plaintiffs find it to be antiquated."); *cf. Halgren v. City of Naperville*, --- F. Supp. 3d ----, 2021 WL 5998583, at *13 (N.D. Ill. Dec. 19, 2021) ("[E]ven though *Jacobson* is not necessarily dispositive on the facts, the decision is still binding precedent on the law generally. Therefore, despite Plaintiffs' invitation to disregard it, this Court must still look to *Jacobson* for guidance."). Indeed, the Seventh Circuit even has noted its application to Kozlov's claims. *See Kozlov v. City of Chicago*, No. 22-1107, Doc. 6 (7th Cir. Jan. 25, 2022) ("[T]he validity of vaccination requirements is well established." (citing *Jacobson*, 197 U.S. at 11; *Klaassen*, 7 F.4th at 593)). Thus, the Court will proceed to consider Kozlov's specific claims, using *Jacobson* and its progeny as a guide.

    A.    **Substantive Due Process (Count VI)**

"There are two types of substantive due process violations": (1) the state actor's conduct "shocks the conscience," and (2) "the state actor violates an identified liberty or property interest

protected by the Due Process Clause." *T.E. v. Grindle*, 599 F.3d 583, 589 (7th Cir. 2010) (citation omitted). For the Constitution's substantive due process requirements to "apply in the first place," the plaintiff must establish an interest that falls "within the Fourteenth Amendment's protection of liberty and property." *Proctor v. McNeil*, 14 F. Supp. 3d 1108, 1112 (N.D. Ill. 2014) (citation omitted); *see Citizens Health Corp. v. Sebelius*, 725 F.3d 687, 694 (7th Cir. 2013) ("[T]he threshold question in any due process challenge is whether a protected property or liberty interest actually exists."); *Haney v. Winnebago Cnty. Bd.*, No. 3:19-cv-50191, 2020 WL 1288881, at *6 (N.D. Ill. Mar. 18, 2020) ("Both substantive and procedural due process claims require a plaintiff to identify a constitutionally protected right to property or liberty."). "A protected property interest is a legitimate claim of entitlement—not defined by the Constitution—but 'by existing rules or understandings that stem from an independent source such as state law.'" *Proctor*, 14 F. Supp. 3d at 1112 (citation omitted). A protected liberty interest includes "bodily integrity, the right to marry, marital privacy, and the right to have children." *Id*.

Here, although Kozlov has a right to bodily autonomy and to privacy, that right does not rise to the level of a fundamental right in the vaccination context. *Klaassen*, 7 F.4th at 593; *Troogstad I*, 2021 WL 5505542, at *5 ("The core flaw with Plaintiffs' claim that refusing vaccination is a fundamental right, then, is not that there is no privacy interest implicated when someone is required or coerced to take a vaccine that they do not want. There certainly is. Rather, the problem is that, when a person's decision to refuse a vaccine creates negative consequences (even life-threatening at times) for other people, that interest is not absolute."); *cf. Halgren*, 2021 WL 5998583, at *22 ("Certainly, given controlling precedent, Plaintiffs have a constitutionally protected liberty interest in refusing the government-coerced medical procedures

7

in this case (i.e., mandated vaccination or testing upon threat of termination). But these cases do not establish that Plaintiffs' due process interests (i.e., their right to voluntary and informed consent as to such medical procedures) trigger 'fundamental' classification (and thus strict scrutiny) under the law."). This is particularly the case here because Order 2021-2 does not compel vaccination but instead only places restrictions on what activities those who do not choose to get vaccinated can do. *See Klaassen*, 7 F. 4th at 593 ("People who do not want to be vaccinated may go elsewhere. Many universities require vaccination against SARS-CoV-2, but many others do not. Plaintiffs have ample educational opportunities."); *Dixon v. De Blasio*, --- F. Supp. 3d ----, 2021 WL 4750187, at *9 (E.D.N.Y. Oct. 12, 2021) ("[V]accination is merely required for those who want to obtain or retain access to certain 'covered premises.' Thus, these EEOs are not forcing New Yorkers to get vaccinated. They are merely placing restrictions on those who choose not to."). And Kozlov provides no support for concluding that his liberty interests in remaining unvaccinated transform into a fundamental right deserving of strict scrutiny because they are coupled with a property interest in his season tickets to Bulls and Blackhawks games. As a result, as discussed above, the rational basis standard used in *Jacobson*, 197 U.S. 11, applies to Kozlov's substantive due process challenge to Order 2021-2. *Klaassen*, 7 F.4th at 593; *Troogstad v . City of Chicago* ("*Troogstad II*"), No. 21 C 5600, 2021 WL 6049975, at *3 (N.D. Ill. Dec. 21, 2021).

Thus, the Court considers whether Order 2021-2 is "rationally related to legitimate government interests," *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997), which is a "highly deferential" standard, *Brown v. City of Mich. City*, 462 F.3d 720, 733 (7th Cir. 2006). Under this standard, Kozlov has the burden to show no "conceivable basis" exists that "might support the government's action." *Minerva Dairy, Inc. v. Harsdorf*, 905 F.3d 1047, 1055 (7th Cir. 2018).

8

The question, in other words, "is whether there is any rational justification for the policies at issue." *Troogstad II*, 2021 WL 6049975, at *4.

As the Court has previously explained, rational bases exist for Order 2021-2's requirements. Combatting COVID-19 is "unquestionably a compelling interest." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020). And Order 2021-2's vaccination requirement is rationally related to the City's interest in slowing the spread of COVID-19, protecting the health of workers who interact with the public as a condition of their employment, and seeking to limit the burden on the healthcare system. *See, e.g.*, *Halgren*, 2021 WL 5998583, at *32 ("[O]n the present record, this Court cannot say that the relationship between the government's legitimate ends (i.e., decreasing the possible degree of viral transmission, or possibly decreasing the number of sick days taken by healthcare workers during a pandemic, including those with natural immunity) is 'so attenuated' from the chosen means (i.e., compelling healthcare workers to either submit to vaccination or surveillance testing) as to be arbitrary, irrational, or otherwise beyond the bounds of reasonable speculation."); *Dixon*, 2021 WL 4750187, at *9 ("Due to the widely recognized individual dangers of contracting COVID-19 and being unvaccinated, as well as the public health risks tied to overwhelming the hospital system, the EEOs are rationally related to a legitimate City interest – restricting unvaccinated individuals' access to certain public locations where the probability of contracting or transmitting COVID-19 is high." (citation omitted)).

Further, "[r]ational-basis review tolerates overinclusive classifications, underinclusive ones, and other imperfect means-ends fits." *St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.*, 919 F.3d 1003, 1010 (7th Cir. 2019). This means that the existence of a debate about the degree of immunity provided by vaccines or the efficacy of a vaccine requirement in place of

9

one allowing for presentation of a negative test does not demonstrate the arbitrariness or irrationality of Order 2021-2. *See Troogstad II*, 2021 WL 6049975, at *5 (existence of "some scientific debate surrounding the degree of immunity provided by vaccines and whether 'natural immunity' from prior COVID-19 infection provides comparable (or, as Plaintiffs assert, superior) protection from the virus" means only "by definition, that Defendants' policies are not 'arbitrary or irrational'"); *Troogstad I*, 2021 WL 5505542, at *7 (rational basis existed for vaccination or testing requirement for City employees "even if there might be some scientific disagreement on the issue"). Thus, because rational bases exist for the adoption and implementation of Order 2021-2, Kozlov has failed to state a substantive due process claim.

      **B.**      **Equal Protection (Count VII)**

Kozlov also argues that Order 2021-2 deprives him of equal protection, contending that it treats unvaccinated and vaccinated persons differently and also creates subclasses of unvaccinated persons without a rational basis for doing so. Being unvaccinated does not amount to membership in a suspect class. *See Srail v. Vill. of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009) ("Suspect classes include race, alienage, and national origin."); *Halgren*, 2021 WL 5998583, at *38 ("While the mandates undoubtedly treat the groups differently, Plaintiffs have not identified any legal support for the notion that vaccination status alone is a traditional suspect (or quasi-suspect) class within the meaning of the Equal Protection Clause."). And while Kozlov contends that the unvaccinated form a politically unpopular group so as to require a more searching form of rational basis review, the complaint and Order 2021-2 do not plausibly suggest that Defendants intended to punish the unvaccinated or an unpopular political group by imposing the vaccination requirement so as to invoke this heightened basis of review. *See Halgren*, 2021 WL 5998583, at *37 ("In select equal protection cases, however, a court may adopt a more critical

lens, even in the absence of a suspect class or fundamental right. Specifically, where a law exhibits a 'desire to harm a politically unpopular group,' the Supreme Court has 'applied a more searching form of rational basis review to strike down such laws under the Equal Protection Clause.'" (quoting *Lawrence v. Texas*, 539 U.S. 558, 580 (2003) (O'Connor, J., concurring))). Because Kozlov has not identified membership in a suspect class, the denial of a fundamental right, or a basis for more searching review, the Court considers only whether a rational basis exists for Order 2021-2. *Srail*, 588 F.3d at 943; *Halgren*, 2021 WL 5998583, at *38.

The same rational justifications discussed with respect to Kozlov's substantive due process claims apply with respect to the equal protection claim, including the rise in COVID-19 cases, the emergence of the Omicron variant and its rapid spread, and the desire not to overwhelm the City's healthcare infrastructure with additional cases. *See Clementine Co. v. De Blasio*, No. 21-cv-7779, 2021 WL 5756398, at *16 (S.D.N.Y. Dec. 3, 2021) ("[T]he mandate, which requires vaccination for the enjoyment of indoor recreational businesses, was conceived of to advance legitimate public health goals (reducing the spread of infection and promoting interest in vaccination)[.]"); *Dixon*, 2021 WL 4750187, at *5 (rational justifications for indoor vaccine requirement include "the rise of the COVID-19 Delta variant, the potential for the disease to overwhelm healthcare infrastructure, and the increased prevalence of breakout cases"). And although Order 2021-2 does include exemptions for certain performers and athletes, the exemptions only apply when they enter a covered location as part of their regular employment; the same vaccination requirement applies to them if they seek to go to a covered location in a non-professional capacity. *Dixon*, 2021 WL 4750187, at *5 (rejecting equal protection claim based on exemption for performing artists and professional sports teams, noting that the exemption only applies "if they are entering a 'covered premises' for the purpose of performance

11

or competition. . . . If those same athletes or artists want to go to a 'covered entity' in a non-professional capacity, the EEOs are clear that they must show proof of vaccination just like everyone else."). "These tailored exceptions are rationally related to allowing this small group of individuals to pursue their professions while still limiting their ability to spread or contract COVID." *Dixon*, 2021 WL 4750187, at *5. Moreover, as with the substantive due process challenge, the fact that Order 2021-2 may be underinclusive or overinclusive in its exemptions does not undermine the rational bases for the order. *See Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1072 (7th Cir. 2013) ("A law can be underinclusive or overinclusive without running afoul of the Equal Protection Clause."). Therefore, because rational bases exist for Order 2021-2's vaccination requirement, Kozlov's equal protection claim fails.

**II.     Commerce Clause Claim (Count V)**

Kozlov also claims that Order 2021-2 violates the Constitution's Commerce Clause. "The Commerce Clause prohibits a state from enacting any statute 'that clearly discriminates against interstate commerce . . . unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism.'" *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541, 548 (7th Cir. 2020) (quoting *Ft. Gratiot Sanitary Landfill Inc. v. Mich. Dep't of Nat. Res.*, 504 U.S. 353, 359 (1992)). "The fact that a state or municipal law affects interstate commerce in some way is by itself insufficient to render the law suspect under the commerce clause, as almost any local regulation is bound to touch upon interstate commerce." *Regan v. City of Hammond*, 934 F.3d 700, 702 (7th Cir. 2019); *see also Park Pet Shop, Inc. v. City of Chicago*, 872 F.3d 495, 501 (7th Cir. 2017) ("Dormant Commerce Clause doctrine applies only to laws that *discriminate* against interstate commerce, either expressly or in practical effect.").

Kozlov maintains that the fact that Order 2021-2 does not provide a negative test option in lieu of proof of full vaccination prevents certain groups of people from patronizing businesses and venues and thus interferes with interstate commerce. He elaborates in his response to the motion to dismiss that, by impacting ticket sales, attendance, and revenue at Bulls and Blackhawks home games, Order 2021-2 adversely impacts all NBA and NHL teams, providing an interstate nexus. But the "dormant Commerce Clause doctrine is concerned only with regulation that *discriminates* against out-of-state firms" as opposed to just touches on interstate commerce. *Park Pet Shop*, 872 F.3d at 503 (emphasis added); *see also C&A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 390 (1994) ("The central rationale for the rule against discrimination is to prohibit state or municipal laws whose object is local economic protectionism[.]"). Even based on Kozlov's expanded theory, he has not plausibly alleged that Order 2021-2 has a discriminatory effect on interstate commerce so as to implicate the dormant Commerce Clause. *See Alliant Energy Corp. v. Bie*, 330 F.3d 904, 911 (7th Cir. 2003) ("If a party seeking to invalidate a statute cannot show any burden on interstate commerce, then the Dormant Commerce Clause is not implicated and the statute will not be invalidated."); *see also Park Pet Shop*, 872 F.3d at 503 ("[S]hift[ing] business within the state . . . has no effect on interstate commerce."). Indeed, as the Seventh Circuit pointed out in addressing Kozlov's motion for an injunction pending appeal, "Chicago's regulation applies only in the City and does not depend on anyone's place of residence or whether that person has crossed a state border to attend a game (or a movie, or a concert) or dine at a restaurant." *Kozlov*, No. 22-1107, Doc. 6; *see also Hopkins Hawley LLC v. Cuomo*, 518 F. Supp. 3d 705, 716 (S.D.N.Y. 2021) (indoor dining restriction only applied to restaurants in New York and New York City and so "it neither 'discriminates' against interstate commerce nor has the 'practical effect' of exerting

13

'extraterritorial control' over it" (citations omitted)); *Mich. Rest. & Lodging Ass'n v. Gordon*, 501 F. Supp. 3d 460, 464–65 (W.D. Mich. 2020) (restriction on restaurant dining did not violate dormant Commerce Clause because "it does not close restaurants and bars beyond Michigan's borders," "distinguish between business entities registered in Michigan and business entities registered in another State," and "while closing indoor dining services in Michigan might have an effect on the interstate food service supply industry, that effect applies equally to in-state and out-of-state suppliers"). Thus, because the vaccination requirement does not implicate the dormant Commerce Clause, Kozlov cannot proceed on his Commerce Clause claim.

### III.     State Law Claims

#### A.     Tortious Interference with Contract (Count I)

Because he cannot use his Bulls and Blackhawks tickets in light of Order 2021-2's vaccination requirement, Kozlov claims that Defendants have tortiously interfered with his season ticket agreements. To state a claim for tortious interference with contract under Illinois law, Kozlov must allege (1) the existence of a valid and enforceable contract between himself and another; (2) Defendants' awareness of the contract; (3) Defendants' intentional and unjustified inducement of a breach of the contract; (4) a breach of the contract, caused by Defendants' conduct; and (5) damages. *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 154–55 (1989).

Kozlov alleges that his purchase of season tickets created a valid contractual relationship between him and the Bulls and Blackhawks, which Order 2021-2 impedes by requiring attendees to provide proof of vaccination. Even assuming that Defendants knew of his specific contract with the Bulls and Blackhawks, nothing suggests that Order 2021-2 causes a breach of that contract. Indeed, Kozlov does not deny that he still has access to his Bulls and Blackhawks tickets and parking pass privileges. And although his contract entitles him to these tickets and

14

parking pass privileges, it does not entitle him to attendance at the games. Instead, it gives him the ability to do what he would like with the tickets. If Kozlov chooses not to comply with the vaccination requirement for attendance, he may resell the tickets to others who have no issues with the vaccination requirement.

Further, Kozlov has not alleged how Defendants have intentionally and unjustifiably induced a breach of contract. As previously discussed, Defendants have instituted the vaccination requirement for purposes of public health and safety, which the City has the authority to do under its police powers. *See City of Evanston v. Create, Inc.*, 85 Ill. 2d 101, 114–15 (1981) (holding that the State and its municipalities have "always had the right under police powers to impose conditions on private contractors as long as it was necessary for the public good," with "[t]he right of a private party to contract in regard to his property . . . subordinate to the overriding needs to protect the interests of the public at large"). Therefore, Kozlov has not alleged the required elements of a tortious interference with contract claim, requiring dismissal of that claim.

**B.      Tortious Interference with Prospective Business Expectancy (Count II)**

Kozlov also argues that Order 2021-2 tortiously interferes with his ability to resell his season tickets. To state a claim for tortious interference with a prospective business expectancy, Kozlov must allege: (1) he had a reasonable expectation of entering a valid business relationship, (2) Defendants knew of that expectation, (3) Defendants purposefully interfered to prevent Kozlov's legitimate expectation from becoming a valid business relationship, and (4) damages resulted from Defendants' interference. *Atanus v. Am. Airlines, Inc.*, 403 Ill. App. 3d 549, 554 (2010).

Kozlov premises this claim on an alleged expectation of reselling his Bulls and Blackhawks tickets, which he claims Defendants have impaired by limiting the people interested

15

in buying tickets on the resale market. But, as discussed above, Order 2021-2 does not interfere with this expectation. Although Order 2021-2 may have decreased the market size, Kozlov still has the right and ability to sell those tickets. Further, Kozlov has not provided more than conclusory allegations of his expectation of conducting business with any specific third parties, Defendants' knowledge of that expectation, or any actions they took specifically directed at those third parties. *See Ammons v. Dart*, No. 13 C 8817, 2015 WL 1740086, at *4 (N.D. Ill. Apr. 13, 2015) ("[A] plaintiff states a cause of action only if he alleges a business expectancy with a specific third party as well as action by the defendant directed towards that third party." (citation omitted)); *Frain Grp., Inc. v. Steve's Frozen Chillers*, No. 14 C 7097, 2015 WL 1186131, at *4 (N.D. Ill. Mar. 10, 2015) (dismissing tortious interference claim where plaintiff failed to identify current or prospective customers, or offer any other allegations supporting his reasonable expectation of new business). Finally, given the City's regulatory powers to protect public health and safety, Kozlov again cannot allege that he had any *legitimate* expectation of selling tickets without restrictions such as those imposed by Order 2021-2. *See Create, Inc.*, 85 Ill. 2d at 114–15. Therefore, like his other tortious interference claim, this claim fails as well.

    **C.**    **Unjust Enrichment (Count III)**

Next, Kozlov claims that Defendants are unjustly enriched by their receipt of tax revenues from the Bulls and Blackhawks season tickets he purchased but cannot use because of the vaccination requirement. To state an unjust enrichment claim, Kozlov must allege that Defendants have "unjustly retained a benefit to [Kozlov's] detriment, and that [Defendants'] retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs.*, 131 Ill. 2d at 160. "A cause of action based upon unjust enrichment does not require fault or illegality on the part of defendants; the essence of the cause

of action is that one party is enriched, and it would be unjust for that party to retain the enrichment." *Stathis v. Geldermann, Inc.*, 295 Ill. App. 3d 844, 864 (1998).

Here, again, Kozlov's claim fails because Defendants have not cancelled all games played at the United Center while retaining the City-imposed taxes he paid in connection with purchasing his tickets. Kozlov could use his tickets if he complies with Order 2021-2's vaccination requirement, and he retains the right to resell them if he chooses not to use them himself. That he decides not to do so does not create an unjust enrichment claim.

### D. Violation of Article VII, Section 6 of the Illinois Constitution (Count IV)

Finally, Kozlov claims that Order 2021-2 violates the Illinois Constitution. Article VII, Section 6(a) of the Illinois Constitution allows home rule units, such as the City, the right to "exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." But "home rule units may not extend their home rule powers, such as the taxing power, beyond their borders unless expressly authorized by the General Assembly." *Hertz Corp. v. City of Chicago*, 2017 IL 119945, ¶ 14. "[T]he constitutional provisions and the statutes reflect an intention to minimize limitations on home rule powers, and, due to the constitutional design, courts should apply 'judicial interpretation of unexpressed legislative inaction' to limit home rule powers only in the '*clearest cases*,' wherein local ordinances interfere with 'vital' state policy." *Souza v. City of W. Chicago*, 2021 IL App (2d) 200047, ¶ 51 (quoting *Palm v. 2800 Lake Shore Dr. Condo. Ass'n*, 2013 IL 110505, ¶ 34).

Kozlov argues that Order 2021-2 violates the City's home rule authority because not all attendees of Bulls and Blackhawks games, or other indoor events to which Order 2021-2 applies, are City residents. But the residence of attendees does not matter: "the question of whether a

17

home rule enactment has extraterritorial effects is answered by focusing on the subject being controlled." *Create, Inc.*, 85 Ill. 2d at 116. Order 2021-2 only affects covered locations in the City and individuals who seek to patronize such locations within City boundaries and does not seek to regulate property outside of its borders. *Id.* Therefore, Order 2021-2 does not have extraterritorial effect and does not violate the City's home rule authority. *See Labell v. City of Chicago*, 2019 IL App (1st) 181379, ¶ 31 (no extraterritorial effect where "[t]he amusement tax ordinance taxes only those patrons who view or participate in an amusement within Chicago"); *Forsberg v. City of Chicago*, 151 Ill. App. 3d 354, 361 (1986) ("A local unit of government is not exercising its taxing powers extraterritorially when it collects a tax from persons located outside the boundaries of the local unit, but who do business within those boundaries. . . . The tax is not extraterritorial where it is imposed on persons who may reside outside of Chicago, but who enter Chicago harbors, use Chicago facilities and pay mooring or docking fees in Chicago.").

### IV.  Dismissal With Prejudice

Having found that Kozlov has not sufficiently pleaded any of his claims, the Court must determine whether to dismiss his complaint with or without prejudice. Although courts typically grant leave to amend liberally, the Court may divert from this general rule where amendment would be futile. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015) (court may dismiss complaint with prejudice "[w]here it is clear that the defect cannot be corrected so that amendment is futile"); *Vargas-Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 974 (7th Cir. 2001) (leave to amend is futile if a new claim would be unable to survive a Rule 12(b)(6) motion to dismiss). Here, providing Kozlov with the opportunity to amend his complaint would be futile because he cannot correct the defects the

Court has identified with his claims. Further, Order 2021-2's vaccine requirement ends on February 28, 2022, likely making any amended claims Kozlov would seek to bring against Defendants moot.[4] Therefore, the Court dismisses Kozlov's complaint with prejudice.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss [32, 33]. The Court dismisses Kozlov's complaint with prejudice and terminates this case.

Dated: February 28, 2022

_____
SARA L. ELLIS
United States District Judge

---

[4] Despite Kozlov titling his complaint as one for injunctive and declaratory relief, he also requested monetary damages. Defendants moved to strike Kozlov's requests for monetary damages, arguing that § 2-201 of the Illinois Tort Immunity Act, 745 Ill. Comp. Stat. 10/2-201, bars him from recovering any such damages. Because the Court finds that he has failed to state a claim, it need not reach Defendants' argument concerning the availability of monetary damages but nonetheless expresses doubt that he could recover any such damages from Defendants.